UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTWOINE BEALER,<br><br>            Plaintiff,<br><br>     v.<br><br>GAVIN NEWSOM, et al.,<br><br>            Defendants. | No.  2:24-cv-3089 TLN AC P<br><br>ORDER AND FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner who filed this civil rights action pursuant to 42 U.S.C. § 1983 without a lawyer.  Plaintiff has paid the court filing fee.

The case is before the court for screening of the complaint, and consideration of plaintiff's motions for preliminary injunctions and motion for an extension of time to file an amended motion for preliminary injunction.  ECF Nos. 1, 2, 8, 9.  For the reasons stated below, the court will grant plaintiff leave to file an amended complaint, deny plaintiff's motion for an extension of time, and recommend denial of plaintiff's motions for preliminary injunctions.

I.      Statutory Screening of Prisoner Complaints

        A.  Legal Standard

The court is required to screen complaints brought by prisoners seeking relief against "a governmental entity or officer or employee of a governmental entity."  28 U.S.C. § 1915A(a).  A claim is legally frivolous when it lacks an arguable basis either in law or in fact.  Neitzke v.

1

Williams, 490 U.S. 319, 325 (1989). The court may dismiss a claim as frivolous if it is based on an indisputably meritless legal theory or factual contentions that are baseless. Neitzke, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. See Jackson v. State of Ariz., 885 F.2d 639, 640 (9th Cir. 1989).

In order to avoid dismissal for failure to state a claim a complaint must contain more than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-57 (2007). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A claim upon which the court can grant relief has facial plausibility. Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. When considering whether a complaint states a claim, the court must accept the allegations as true, Erickson v. Pardus, 551 U.S. 89, 93-94 (2007), and construe the complaint in the light most favorable to the plaintiff, Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

B. The Complaint

The complaint alleges that since December of 2005, eight named defendants[1] and hundreds of Doe defendants at five different prisons have violated plaintiff's rights under the Eighth and Fourteenth Amendments. ECF No. 1 at 1-37.

C. Rule 8(a)

At the outset, the court notes that the complaint violates Rule 8 of the Federal Rules of Civil Procedure, which requires that a pleading consist of a "short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). To survive Rule 8(a)(2), a complaint must provide "fair notice of what plaintiff's claim is and the grounds upon which it rests" in order to enable the defendants to answer and prepare for trial, and to identify the

////

---

[1] Defendants Newsom, Macomber, Andre, Borla, Arrias, Guzman, Arce, and Teeters. ECF No. 1 at 1-3.

nature of the case. Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 346 (2005); see also Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

Several forms of pleading practices can preclude a defendant of fair notice and, thus, warrant dismissal under Rule 8(a)(2). One such practice is "shotgun pleading," in which the instant complaint engages. As the Eleventh Circuit explained in Weiland v. Palm Beach County. Sheriff's Office, there are four common types of shotgun pleading:

> The most common type [of shotgun pleading]—by a long shot—is a complaint containing multiple counts where each adopts the allegations of all the preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type . . . is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is a relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.

792 F.3d 1313, 1321-23 (11th Cir. 2015).

Plaintiff's thirty-seven-page complaint engages in the second and fourth types of shotgun pleading. The complaint includes an introduction, arguments, speeches, explanations, and stories, conclusory, vague and immaterial facts, and attaches an additional thirteen-pages of exhibits. The complaint also provides no details as to what claim is brought against which defendant (of eight named and hundreds of Doe defendants listed) and what each defendant did or did not do that violated plaintiff's rights. This alone is grounds for dismissal. See, e.g., Agnew v. Moody, 330 F.2d 868, 870 (9th Cir. 1964) (finding district court justified in dismissing complaint for failure to comply with Rule 8(a)).

  D. Improper Joinder

The complaint is improper as it brings multiple, unrelated claims against more than one defendant. Plaintiff is advised that he may only join multiple claims if they are all against a single defendant, Fed. R. Civ. P. 18(a), and he may only join defendants where the right to relief arises out of the same "transaction, occurrence, or series of transactions," and "any question of

3

law or fact common to all defendants will arise in the action," Fed. R. Civ. P. 20(a)(2). The "same transaction, occurrence, or series of transactions" requirement "refers to similarity in the factual background of a claim." Coughlin v. Rogers, 130 F.3d 1348, 1350 (9th Cir. 1997). In other words, *joining more than one claim* is only proper when it is against the same defendant, and *joining multiple defendants in one complaint* is only proper when the claims against them are based on the same facts.

In this case, the fact that plaintiff alleges violations of his rights under the Eighth and Fourteenth Amendments against all defendants does not make his claims related for purposes of Federal Rule 20(a). Although similar in nature, the alleged misclassifications, rules violation reports ("RVRs"), use of force, and deliberate indifference to plaintiff's safety occurred at different locations, at different times, and involved different defendants. See ECF No. 1 at 8 (alleged misclassification by CDCR in 2005); 12, 19 (High Desert State Prison ("HDSP") misclassification in 2023, HDSP's Institutional Classification Committee ("ICC") hearing and decision, and RVR in January 2024); 13-14, 20-22 (Correctional Treatment Facility ("CTF") ICC hearing and decision, RVR, and use of force to transfer plaintiff from CTF to Calipatria State Prison in March 2024); 15 (Calipatria ICC hearing and decision, interview with defendant Teeters, and transfer to Centinela State Prison in or around April 2024); 22 (Centinela RVRs and decision to transfer plaintiff to Salinas Valley State Prison ("SVSP"); 24 (SVSP ICC hearing and decision, RVR, assault by SVSP correctional officers, forced housing in general population, stabbing by general population inmates). The undersigned therefore finds that defendants at HDSP, CTF, Calipatria, Centinela, and SVSP are improperly joined.

When parties are misjoined, "the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21. "[D]istrict courts who dismiss rather than sever must conduct a prejudice analysis, including 'loss of otherwise timely claims if new suits are blocked by statutes of limitations." Rush v. Sport Chalet, Inc., 779 F.3d 973, 975 (9th Cir. 2015) (citations omitted).

Severance is inappropriate here, and dismissal warranted, for several reasons. Although plaintiff makes some allegations regarding conduct that appears unlikely to support a timely claim

4

1 in any event, including a misclassification from 2005 and his attempts to resolve the
2 misclassification since then, his oldest current claims appear to have arisen at HDSP in 2023.
3 Accordingly, any concerns about the statute of limitations are allayed.  See Jones v. Blanas, 393
4 F.3d 918, 927 (9th Cir. 2004) (two-year statute of limitations for § 1983 claims in California);
5 Johnson v. State of California, 207 F.3d 650, 654 (9th Cir. 2000) (prisoners entitled to statutory
6 tolling of two years if serving a sentence of less than life (citing Cal. Civ. Proc. Code § 352.1(a)).[2]
7 The undersigned also recognizes that if the court severs the claims into four additional actions
8 instead of dismissing them without prejudice, plaintiff will be obligated to pay the statutory filing
9 fee of $350.00 for each additional action, even if he proceeds in forma pauperis, 28 U.S.C.
10 § 1915(b)(1), and there is the potential for accruing a strike if the complaints are ultimately found
11 to not state claims for relief, 28 U.S.C. § 1915(g).  Additionally, the undersigned notes that the
12 claims against defendants at CTF, SVSP, Calipatria, and Centinela do not appear to be properly
13 brought before this court.  See 28 U.S.C. § 1391(a) (venue for a civil suit is appropriate where
14 any defendant resides, if all defendants are residents of the same state; where "a substantial part
15 of the events or omissions giving rise to the claim occurred"; or where any defendant is subject to
16 the court's personal jurisdiction with respect to the case).  Claims against defendants at CTF and
17 SVSP should be presented to the U.S. District Court for the Northern District of California, and
18 claims against defendants at Calipatria and Centinela should be presented to the U.S. District
19 Court for the Southern District of California.
20          For all these reasons, the claims against defendants at CTF, SVSP, Calipatria, and
21 Centinela should be dismissed without prejudice to re-filing as separate actions.
22              E.    Factual Allegations Concerning Events at HDSP[3]
23      Plaintiff alleges that from 2016 to January 2024, he was housed in general population at
24 HDSP.  ECF No. 1 at 18, 26.  In 2023, plaintiff was placed on lock down along with Bloods and
25 Crips and was told he was a suspect.  Id. at 19.  Plaintiff appealed this classification, but the office

---

[2] The California Department of Corrections and Rehabilitation's Inmate Locator website, accessible at https://inmatelocator.cdcr.ca.gov/, shows plaintiff has the possibility of parole.
[3] Because the claims against defendants at CTF, Salinas, Calipatria, and Centinela are improperly joined, the rest of the screening order focuses on the claims based on events at HDSP.

5

of appeals determined that plaintiff was appropriately documented as a Piru Blood Security Threat Group ("STG") II suspect. Id.

Around January 13, 2024, plaintiff was sent from general population to the Restricted Housing Unit ("RHU") after "some non-affiliated inmates were assaulted and staff received some confidential information that the plaintiff may be targeted for assault due to him being a non-affiliated inmate." Id. at 12. A few days later, he received a RVR for refusing his assigned housing, which plaintiff claims was unnecessary and served no legitimate purpose. Id. Sometime before February 12, 2024, plaintiff had an ICC hearing before the HDSP ICC where he expressed he would like to be housed in a facility where there is no active gang activity and that he would need more than one ICC hearing to fully address the issue. Id. at 13. At the hearing, the warden, defendant Andre, agreed and said he would send a counselor out to talk to the plaintiff. Id. A few days later, plaintiff was transferred to CTF because the RHU at HDSP was only able to accommodate Correctional Clinical Case Management System inmates, which plaintiff was not. Id.

Plaintiff claims that by misclassifying him as a gang member, he was forced to house on yards where there was STG activity, subjected to lockdowns when STG members were involved in incidents, and unable to program with non-affiliated persons. Id. at 4-6.

F.  Failure to State a Claim

Having conducted the screening required by 28 U.S.C. § 1915A, the court finds that the complaint does not state a valid claim for relief pursuant to the Eighth or Fourteenth Amendments against Newsom, Macomber, Andre, or Does 1-99 from HDSP's ICC.

Plaintiff fails to state any claims against Newsom, Macomber, and Does 1-99 from HDSP's ICC because the complaint provides no factual allegations against them, such as what each of them did or did not do that violated plaintiff's rights. Additionally, it appears that Newsom and Macomber were named solely based on their positions as governor and secretary of CDCR, which cannot be the basis for liability under § 1983. See Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009) (no *respondeat superior* liability under § 1983).

////

1    Plaintiff also fails to state an Eighth Amendment claim because allegation that plaintiff
2 has been denied programming opportunities and other privileges does not rise to the level of an
3 Eighth Amendment injury, and plaintiff's temporary retention in RHU cannot change that.
4 Moreover, the complaint is devoid of factual allegations supporting that any defendant at HDSP
5 *knew* plaintiff was being denied humane conditions and disregarded an excessive risk to the
6 prisoner's health or safety. See Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (Eighth
7 Amendment liability requires defendant's subjective knowledge of risk).
8    Plaintiff also fails to state a claim based on his "misclassification" under the Eighth
9 Amendment or any other theory. Prisoners have no constitutional right to a particular housing
10 classification, nor do they have a right to be housed in a particular prison or unit. Olim v.
11 Wakinekona, 461 U.S. 238, 244-45 (1983); Myron v. Terhune, 476 F.3d 716, 718 (9th Cir. 2007).
12 To the extent plaintiff alleges that he received a false RVR at HDSP, he has no constitutionally
13 protected right to be free from false charges. See Sprouse v. Babcock, 870 F.2d 450, 452 (8th
14 Cir. 1989); Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986); Hanrahan v. Lane, 747 F.2d
15 1137, 1141 (7th Cir. 1984). And to the extent he alleges he was deprived of some protected
16 liberty interest as a result of the false charges, plaintiff has not identified the protected liberty
17 interest, nor has he alleged facts demonstrating a violation of plaintiff's limited due process rights
18 under Wolff v. McDonnell, 418 U.S. 539, 556-71 (1974).
19    Plaintiff has also not stated a due process claim based on his placement in administrative
20 segregation[4] at HDSP because he has not alleged that, assuming a protected liberty interest, he
21 failed to receive notice of the basis for his placement or was not given an opportunity to respond.
22 See Hewitt v. Helms, 459 U.S. 460, 468 (1983), abrogated in part on other grounds by Sandin v.
23 Conner, 515 U.S. 472, 484 (1995). In fact, the allegations indicate the opposite. Plaintiff was
24 informed he was placed in administrative segregation because staff received confidential
25 information that he may be targeted for assault, and he had a hearing before the HDSP ICC. ECF
26 No. 1 at 12. That he disagreed with that decision does not give rise to a § 1983 claim.

---

[4] Plaintiff alleges RHU is what was formerly referred to as administrative segregation. See ECF No. 1 at 14.

Lastly, plaintiff's equal protection claim—which appears to be that his misclassification as an STG member forced him to program with STG members at HDSP and did not allow him to program with non-STG affiliates—also fails. Plaintiff does not allege that the challenged classification decision was based on his membership in a protected class. See Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003). A prison housing policy of separating rival gangs but not separating unaffiliated inmates from gang members does not implicate any protected class or fundamental right. Nesbit v. Dep't of Pub. Safety, 283 F. App'x 531, 533-34 (9th Cir. 2008). Nor does plaintiff allege that defendants *intentionally* treated him differently from similarly situated individuals without a rational relationship to a legitimate government purpose. See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). At most plaintiff alleges a possible mistake in classification, which does not violate equal protection.

### G. Leave to Amend

For the reasons set forth above, the undersigned finds that defendants located at CTF, SVSP, Calipatria, and Centinela should be dismissed because they are not properly joined, and that defendant has not stated claims against defendants Newsom, Macomber, Andre, or Does 1-99 from HDSP's ICC. Because of these defects, the court will not order the complaint to be served on defendants. Plaintiff may try to fix these problems by filing an amended complaint, however he is cautioned to make sure his claims and defendants are properly joined before this court. In deciding whether to file an amended complaint, plaintiff is provided with the relevant legal standards governing his potential claims for relief which are attached to this order. See Attachment A.

### II. Motion for Preliminary Injunction

Plaintiff filed a motion for preliminary injunction concurrently with the complaint, seeking an order enjoining CDCR from transferring him. ECF No. 2 at 1. Before the court ruled on the motion, plaintiff filed a motion for an extension of time to file an amended motion. ECF No. 4. The court granted an extension of time. ECF No. 7. Plaintiff mailed the amended motion for preliminary injunction before the deadline. See ECF No. 8. The amended motion seeks an order enjoining CDCR from transferring plaintiff until this case is resolved and requiring CDCR

to house plaintiff in a facility that does not have STG activity.  ECF No. 8 at 1.

### A.  Legal Standard Governing Preliminary Injunctive Relief

"A preliminary injunction . . . is not a preliminary adjudication on the merits but rather a device for preserving the status quo and preventing the irreparable loss of rights before judgment."  Sierra On-Line, Inc. v. Phoenix Software, Inc., 739 F.2d 1415, 1422 (9th Cir. 1984).  A preliminary injunction represents the exercise of "a very far reaching power never to be indulged in except in a case clearly warranting it."  Dymo Indus., Inc. v. Tapeprinter, Inc., 326 F.2d 141, 143 (9th Cir. 1964).  It is an "'extraordinary and drastic remedy'; it is never awarded as of right."  Munaf v. Geren, 553 U.S. 674, 689-90 (2008) (citation omitted).

"The proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'"  Stormans, Inc. v. Selecky, 586 F.3d 1109, 1127 (9th Cir. 2009) (citing Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008)) (internal quotations omitted).  "Those seeking injunctive relief must proffer evidence sufficient to establish a likelihood of irreparable harm."  Herb Reed Enterprises, LLC v. Fla. Ent. Mgmt., Inc., 736 F.3d 1239, 1251 (9th Cir. 2013).

The Ninth Circuit's sliding-scale test for a preliminary injunction has been incorporated into the Supreme Court's four-part Winter standard.  Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011) (explaining that the sliding scale approach allowed a stronger showing of one element to offset a weaker showing of another element).  "In other words, 'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the Winter test are also met."  Alliance for the Wild Rockies, 632 F.3d at 1131-32.  Additionally, in cases brought by prisoners involving conditions of confinement, any preliminary injunction "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm."  18 U.S.C. § 3626(a)(2).

A mandatory injunction orders a party to take action. Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co., 571 F.3d 873, 879 (9th Cir. 2009). Because a mandatory injunction "'goes well beyond simply maintaining the status quo . . . [it] is particularly disfavored.'" Id. (internal alterations omitted). "In general, mandatory injunctions 'are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages.'" Id. (quoting Anderson v. United States, 612 F.2d 1112, 1115 (9th Cir. 1979)).

B. Analysis

Here, plaintiff seeks a prohibitory and mandatory injunction: a prohibitory injunction preventing CDCR from transferring plaintiff to another prison, and a mandatory injunction requiring CDCR to place plaintiff in a facility without STG activity. Plaintiff has not met the standard for either type of injunction. He has not demonstrated that he is likely to succeed on the merits because the complaint is being dismissed for failing to state a claim. Moreover, plaintiff has not established he is likely to suffer irreparable injury, much less extreme or very serious damage. Although the incident that occurred at SVSP is concerning, plaintiff has not demonstrated that he is at risk of future harm because it's unclear who stabbed him, why he was stabbed, and whether this threat still exists. Plaintiff defeats his own motion by conceding that he does not know why he was stabbed at SVSP and that "any attempt to explain why would be pure speculation," see ECF No. 8 at 7, and then claiming he is at risk of future harm because STG issues follow inmates. Absent evidence of likelihood of irreparable harm or extreme or serious damage, the undersigned recommends denying plaintiff's motions for preliminary injunctive relief without prejudice. See Herb Reed Enterprises, LLC, 736 F.3d at 1251 ("Those seeking injunctive relief must proffer evidence sufficient to establish a likelihood of irreparable harm.").

III.   Motion for Extension of Time to File an Amended Motion for Preliminary Injunction

On December 29, 2024, before the plaintiff mailed the amended motion for preliminary injunction, plaintiff filed a second motion for an extension of time. ECF No. 9. It appears the motion was delayed in the mail and not received until after the court had already received plaintiff's amended motion for a preliminary injunction. Because the amended motion for

preliminary injunction was timely filed under the "prisoner mailbox rule," plaintiff's second motion for an extension of time is denied as moot.

IV.   Plain Language Summary of this Order for Party Proceeding Without a Lawyer

Your complaint will not be served because the facts alleged are not enough to state a claim.  You are being given a chance to fix these problems by filing an amended complaint.  If you file an amended complaint, pay particular attention to the legal standards attached to this order.  Be sure to provide facts that show exactly what each defendant did to violate your rights.  **Any claims and information not in the amended complaint will not be considered.**

It is also being recommended that your motions for preliminary injunctions be denied because you have not alleged enough to state a claim for relief and you have not alleged you will suffer future irreparable harm without a court order at this time.

CONCLUSION

In accordance with the above, **IT IS HEREBY ORDERED** that:

1.   Plaintiff's complaint fails to state a claim upon which relief may be granted, see 28 U.S.C. § 1915A, and will not be served.

2.   Plaintiff's motion for an extension of time (ECF No. 9) is DENIED as moot.

3.   Within thirty days from the date of service of this order, plaintiff may file an amended complaint that complies with the requirements of the Civil Rights Act, the Federal Rules of Civil Procedure, and the Local Rules of Practice.

4.   The amended complaint must be no more than 25 pages long, bear the docket number assigned this case, and be labeled "First Amended Complaint."

5.   Failure to file an amended complaint in accordance with this order will result in a recommendation that this action be dismissed pursuant to Rule 41(b) of the Federal Rules of Civil Procedure.

6.   The Clerk of the Court is directed to send plaintiff a copy of the prisoner complaint form used in this district.

**IT IS FURTHER RECOMMENDED** that plaintiff's motion for preliminary injunction (ECF No. 2) and amended motion for preliminary injunction (ECF No. 8) be DENIED

without prejudice.

These findings and recommendations, concerning plaintiff's motions for preliminary injunctions, are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, plaintiff may file written objections with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 4, 2025

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

Attachment A

This Attachment provides, for informational purposes only, the legal standards that may apply to your claims for relief. Pay particular attention to these standards if you choose to file an amended complaint.

I. Legal Standards Governing Amended Complaints

If plaintiff chooses to file an amended complaint, he must demonstrate how the conditions about which he complains resulted in a deprivation of his constitutional rights. Rizzo v. Goode, 423 U.S. 362, 370-71 (1976). The complaint must also allege in specific terms how each named defendant is involved. Arnold v. Int'l Bus. Machines Corp., 637 F.2d 1350, 1355 (9th Cir. 1981). There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. Id.; Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Furthermore, "[v]ague and conclusory allegations of official participation in civil rights violations are not sufficient." Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982) (citations omitted).

Plaintiff is also informed that the court cannot refer to a prior pleading in order to make his amended complaint complete. Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. This is because, as a general rule, an amended complaint supersedes any prior complaints. Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967) (citations omitted). Once plaintiff files an amended complaint, any previous complaint no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

II. Legal Standards Governing Substantive Claims for Relief

A. Doe Defendants

Although the use of Doe defendants is acceptable to withstand dismissal at the initial screening stage, service of process for these defendants will not be ordered until such time as plaintiff has: 1) identified them by their real names through discovery; and, 2) filed a motion to amend the complaint to substitute their real names. See Mosier v. Cal. Dep't of Corr. & Rehab., 2012 WL 2577524, at *3, 2012 U.S. Dist. LEXIS 92286, at * 8-9 (E.D. Cal. July 2, 2012);

1

Robinett v. Correctional Training Facility, 2010 WL 2867696, at *4, 2010 U.S. Dist. LEXIS 76327, at * 12-13 (N.D. Cal. July 20, 2010).  Additionally, to state a claim against Doe defendants, plaintiff must allege conduct by each specific Doe defendant to establish liability under 42 U.S.C. § 1983.  This means that plaintiff should identify each Doe defendant *separately* (e.g., Doe 1, Doe 2, etc.) and explain what *each* individual did to violate his rights.

### B. Personal Involvement

The civil rights statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978) (citation omitted).  In order to state a claim for relief under section 1983, plaintiff must link each named defendant with some affirmative act or omission that demonstrates a violation of plaintiff's federal rights.

### C. Supervisory Liability

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior. Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009) ("In a § 1983 suit . . . the term "supervisory liability" is a misnomer.  Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct.").  When the named defendant holds a supervisory position, the causal link between the defendant and the claimed constitutional violation must be specifically alleged; that is, a plaintiff must allege some facts indicating that the defendant either personally participated in or directed the alleged deprivation of constitutional rights or knew of the violations and failed to act to prevent them.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  Supervisory liability may also exist without any personal participation if the official implemented "a policy so

2

deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations and quotations marks omitted), abrogated on other grounds by Farmer v. Brennan, 511 U.S. 825, 836-38 (1970).

      D.   Joinder of Claims and Parties

A plaintiff may properly assert multiple claims against a single defendant in a civil action. Fed. R. Civ. P. 18. In addition, a plaintiff may join multiple defendants in one action where "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). However, unrelated claims against different defendants must be pursued in separate lawsuits. See George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). This rule is intended "not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g)." Id.

      E.   Eighth Amendment – Conditions of Confinement

In order for a prison official to be held liable for alleged unconstitutional conditions of confinement, the prisoner must allege facts that satisfy a two-prong test. Peralta v. Dillard, 744 F.3d 1076, 1082 (9th Cir. 2014) (citing Farmer v. Brennan, 511 U.S. 825, 837 (1994)). The first prong is an objective prong, which requires that the deprivation be "sufficiently serious." Lemire v. California Dep't of Corr. & Rehab., 726 F.3d 1062, 1074 (9th Cir. 2013) (citing Farmer, 511 U.S. at 834). In order to be sufficiently serious, the prison official's "act or omission results 'in the denial of the minimal civilized measure of life's necessities." Lemire, 726 F.3d at 1074. The objective prong is not satisfied in cases where prison officials provide prisoners with "adequate shelter, food, clothing, sanitation, medical care, and personal safety." Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quoting Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982)). "[R]outine discomfort inherent in the prison setting" does not rise to the level of a constitutional

violation. Johnson, 217 F.3d at 732 ("[m]ore modest deprivations can also form the objective basis of a violation, but only if such deprivations are lengthy or ongoing"). Rather, extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. Farmer, 511 U.S. at 834; Hudson v. McMillian, 503 U.S. 1, 9 (1992). The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim. Johnson, 217 F.3d at 731.

The second prong focuses on the subjective intent of the prison official. Peralta v. Dillard, 744 F.3d 1076, 1082 (9th Cir. 2014) (citing Farmer, 511 U.S. at 837). The deliberate indifference standard requires a showing that the prison official acted or failed to act despite the prison official's knowledge of a substantial risk of serious harm to the prisoner. Id. (citing Farmer, 511 U.S. at 842); see also Redman v. County. of San Diego, 942 F.2d 1435, 1439 (9th Cir. 1991). Mere negligence on the part of the prison official is not sufficient to establish liability. Farmer, 511 U.S. at 835.

### F. Fourteenth Amendment Due Process Clause

The Fourteenth Amendment prohibits the state deprivation of life, liberty, or property without due process of law. U.S. Const. amend. XIV, § 1. To warrant protection under this clause, a plaintiff must establish that their life, liberty, or property interest is at stake. Tellis v. Godinez, 5 F.3d 1314, 1316 (9th Cir. 1993). In the prison context, a protected liberty interest may arise from the Constitution itself or from state policies and regulations. Sandin v. Conner, 515 U.S. 472, 484 (1995). Where a liberty interest is created by state policies or regulations, it is "generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id.

#### i. Classification

Prisoners have no constitutional right to a particular housing classification, nor do they have a right to be housed in a particular prison or unit. Olim v. Wakinekona, 461 U.S. 238, 244-45 (1983); Myron v. Terhune, 476 F.3d 716, 718 (9th Cir. 2007) (concluding California prisoner

does not have liberty interest in residing at a level III prison as opposed to level IV prison); Hernandez v. Johnston, 833 F.2d 1316, 1318 (9th Cir. 1987) (emphasizing that "'a prisoner has no constitutional right to a particular classification status.'") (quoting Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976)). Prison officials have broad discretion when housing and disciplining inmates. See Grayson v. Rison, 945 F.2d 1064, 1067 (9th Cir. 1991).

> ii. Disciplinary Reports and Proceedings

A prisoner has no constitutionally-guaranteed immunity from being falsely or wrongly accused of conduct that may lead to disciplinary sanctions. See Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989); Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986); Hanrahan v. Lane, 747 F.2d 1137, 1141 (7th Cir. 1984). As long as a prisoner is afforded procedural due process in the disciplinary hearing, allegations of a fabricated charge generally fail to state a claim under section 1983. See Hanrahan v. Lane, 747 F.2d 1137, 1140–41 (7th Cir. 1984). An exception exists when the fabrication of charges infringed on the inmate's substantive constitutional rights, such as when false charges are made in retaliation for an inmate's exercise of a constitutionally protected right. See Sprouse, 870 F.2d at 452 (holding that filing of a false disciplinary charge in retaliation for a grievance filed by an inmate is actionable under section 1983.

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Rather, to state a procedural due process violation based on disciplinary proceedings, a plaintiff must establish he was deprived of a liberty interest and then he must show that the procedures provided were constitutionally insufficient. Kentucky Dep't of Corr. V. Thompson, 490 U.S. 454, 459-60 (1989). With respect to prison disciplinary proceedings that include the loss of a liberty interest, an inmate must receive (1) twenty-four-hour advanced written notice of the charges against him, Wolff, 418 U.S. at 563-64; (2) a "written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action," id. at 564 (internal quotation marks and citation omitted); (3) an opportunity to call witnesses and present documentary evidence where doing so "will not be unduly hazardous to institutional safety or

correctional goals," id. at 566; (4) assistance at the hearing if he is illiterate or if the matter is complex, id. at 570; and (5) a sufficiently impartial fact finder, id. at 570-71.  A finding of guilt must also be "supported by some evidence in the record."  Superintendent v. Hill, 472 U.S. 445, 454 (1985).

### iii.  Administrative Segregation

"Administrative segregation" is a catch-all phrase for any form of non-punitive segregation to protect a prisoner from other inmates, protect others from the segregated prisoner, or pending disciplinary charges, transfer, or re-classification.  See Hewitt v. Helms, 459 U.S. 460, 468 (1983), abrogated in part on other grounds by Sandin, 515 U.S. 472.  When a prisoner is placed in administrative segregation, prison officials must, within a reasonable time after the prisoner's placement, conduct an informal, non-adversary review of the evidence justifying the decision to segregate the prisoner pending completion of an investigation.  Id. at 476.  The prisoner must receive some notice of the charges and be given an opportunity to respond to the charges. See id. at 476.

### G.  Fourteenth Amendment Equal Protection Clause

The Fourteenth Amendment's Equal Protection Clause requires the State to treat all similarly situated people equally.  City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985) (citation omitted).  "To state a claim for violation of the Equal Protection Clause, a plaintiff must show that the defendant acted with an intent or purpose to discriminate against him based upon his membership in a protected class."  Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003) (citing Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998)).  Alternatively, a plaintiff may state an equal protection claim if he shows similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate government purpose.  Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (citations omitted).